**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bruce Lusk BASS, III, Defendant-
Appellant.**

No. 73–1523.

United States Court of Appeals,
Fifth Circuit.

March 11, 1974.

George W. Shaffer, Kenneth L. Yarbrough, Corpus Christi, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, GODBOLD and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

Bruce L. Bass III was convicted on five counts of violating 21 U.S.C. §§ 843

and 846 (1970):[1] counts I, III, and IV charged Bass with obtaining a controlled substance, Demerol, by forging or altering a prescription; count II charged Bass with attempting to obtain Demerol upon a forged prescription, and count V charged Bass with obtaining Demerol through prescriptions acquired by misrepresentation, deception, fraud, and subterfuge.

These relatively simple charges bore no simple trial, and appellant Bass now presents six grounds for reversal: (1) that the evidence offered by the government on the issue of the defendant's sanity at the time of the offense alleged was insufficient to raise a jury question, (2) that the district court's instructions to the jury on the issue of defendant's sanity were not sufficiently clear as to place the burden of proving the defendant sane beyond a reasonable doubt at the time of the offenses on the government, (3) that a supplemental charge given to the jury by the district court had a coercive effect on their deliberations, (4) that the evidence offered by the government on counts II through V was insufficient to establish guilt beyond a reasonable doubt, (5) that the district court's limiting of the scope of defense counsel's cross-examination of government witnesses violated the defendant's rights to due process and to confrontation of witnesses, and (6) that the counts in the indictment did not state a clear and definite violation of 21 U.S.C. §§ 843 and 846.

*Criminal Responsibility*

It was proved at the trial that appellant Bass suffers from regional or terminal enteritis, an acutely painful disease of the lower gastro-intestinal tract. In Bass, the disease was so severe that several feet of his small intestine and colon had to be surgically removed. One of his treating doctors testified that several more feet of his small intestine were presently infected with the disease.

Appellant introduced the testimony of two doctors, qualified as experts in psychiatry, that on the dates of the charged offenses, he was by reason of mental disease or defect lacking in substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, thus placing the defendant precisely within the legal definition of insanity which we announced in Blake v. United States, 5th Cir. 1969, 407 F.2d 908.

The doctors, both of whom had treated appellant for several years, testified that on or about the dates charged in the indictment, Bass had been subject to severe attacks, and that during such attacks he suffered extremely high temperatures, lapsed into delirium and unconsciousness, exhibited substantial anxiety, and on one occasion discussed suicide. The doctor who had treated appellant at greatest length, Dr. Charles Bost, testified that he believed that Bass had suffered temporary brain damage from the high temperatures which accompa-

---

1. Title 21 U.S.C. § 843 provides in pertinent part:

§ 843. Prohibited acts C—Unlawful Acts
(a) It shall be unlawful for any person knowingly and intentionally—
* * * * *
(3) to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge;
* * * * *
(c) Any person who violates this section shall be sentenced to a term of imprisonment of not more than 4 years, a fine of not more than $30,000, or both; except that if any person commits such a violation after one or more prior convictions of him for violation of this section, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more than 8 years, a fine of not more than $60,000, or both.

Title 21 U.S.C. § 846 provides:
§ 846. Attempt and conspiracy
Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

nied his attacks. Between 1970 and the time of trial, Bass had been hospitalized more than five times. Shortly after the final incident for which he was indicted, Bass was hospitalized for about six weeks, during which time he received steady doses of Demerol, the only drug which had any effect whatsoever on his pain. The result of his genuine need for Demerol was involuntary addiction. Both treating doctors testified that Bass' chronic anxiety, which was caused by an awareness that his disease was incurable and that he would forever be dependent on Demerol for relief from pain, constituted a "mental disease or defect" as required by the *Blake* test.

■ The sanity of the accused is always an element of the offense charged. But in the legal construction of reality, the defendant is presumed sane, and where no evidence to the contrary is presented, that presumption is wholly sufficient to satisfy the required proof that the defendant is sane, and hence responsible for his actions. Mims v. United States, 5th Cir. 1967, 375 F.2d 135, 140.

■ However, once a defendant produces even slight evidence tending to prove his insanity at the time of the alleged offense, the presumption of sanity disappears, and the government then has the burden of proving the defendant's sanity beyond a reasonable doubt. Brock v. United States, 5th Cir. 1967, 387 F.2d 254, 257; Blake v. United States, *supra,* 407 F.2d at 911; United States v. Davila-Nater, 5th Cir. 1973, 474 F.2d 270, 277. The question of sufficiency of the evidence necessary to make an issue for the jury on the defense of insanity as well as whether the evidence establishes as a matter of law a reasonable doubt as to a defendant's sanity is for the court. Nagell v. United States, 5th Cir. 1968, 392 F.2d 934, 937; Blake v. United States, *supra,* 407 F.2d at 911.

■ Under *Blake,* after the defendant had produced the above testimony, the prosecution's burden was to negate beyond a reasonable doubt that at the time Bass ostensibly committed the offenses in question he was (1) by reason of mental disease or defect lacking in substantial capacity either (2) to appreciate the wrongfulness of his conduct or (3) to conform his conduct to the requirements of the law. United States v. Parks, 5th Cir. 1972, 460 F.2d 736, 738.

The only expert testimony offered by the government was that of a Dr. William B. Cline who had seen the defendant for 45 minutes some six months after the last incident. Having discovered that this doctor was unable to render an opinion as to the sanity of the defendant at the times alleged in the indictment, the government resorted to the use of a hypothetical question,[2] to which Dr. Cline did respond.

Dr. Cline's answer to the hypothetical question did not negate the hypothesis that Bass might very well have been unable to conform his conduct to the re-

2. Question by government counsel: All right, assuming hypothetically that there is a patient suffering from terminal, or regional enteritis, which requires an operation for the removal of a section of intestine, some, say, two or three feet of intestine; that the condition periodically recurs, causing some pain; that the patient over the period of the medical treatment had administered Demerol for the control of pain; that as a result of this, or some other contact with the narcotic substance, the patient additionally becomes addicted to Demerol; assuming a person in that condition, who also perhaps has, assume that he does exhibit some anxiety over his physical condition, his illness; could such, with no other evidence of any psychosis or additional emotional problem, could such a person in your expert opinion be said to suffer from a mental disease or defect which caused him to lack substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law?

Answer by Dr. Cline: Well, to me, it is conceivable that under the influence of the narcotic substance, such as Demerol, and with severe pain, a patient's ability to conform with the law, for instance, in that respect, it might be altered, but that is, is, would have been momentary, it would not be an existing mental disease or defect in the usual sense.

quirements of the law, but his answer did imply that this inability would not constitute "an existing mental disease or defect in the usual sense." On cross-examination, counsel for the defendant attempted to elicit the meaning of the quoted phrase. Dr. Cline indicated that he intended to rule out the possibility of a permanent mental defect. He did not intend to eliminate the hypothesis of a temporary or momentary mental disease or defect, the only theory relied on by Bass at the trial. He also conceded on cross-examination that Dr. Oliver, a specialist in the problems of drug addiction, who had treated Bass and whom he knew and trusted professionally, was in a much better position to form an opinion concerning Bass' sanity.

The test which we announced in *Blake* does not require that the mental disease or defect be a permanent one. The disease or defect may be permanent or temporary as long as the requirements of the test are otherwise met. When the issue of insanity arises in the trial of a criminal case, the most fundamental fabric of American jurisprudence also goes on trial. For in that case, the basis of criminal responsibility is examined. That examination has always involved a difficult accommodation between legal and moral precepts on one hand and medical theory and fact on the other. Human action rarely admits of simple explanation; where the criminal case presents no issue of insanity, the presumption of sanity and our objective assessment of the facts of the crime "explain" the conduct. But where the defendant's sanity is before the court, we are required to perform a most difficult task. To engage in a debate on the permanency or lack of permanency of the mental disease or defect would plunge this branch of the law into the Serbonian Bog of which Cardozo warned us, if we are not already there.[3]

We have stated that the nature and quantum of rebuttal evidence sufficient to present a jury question is to some degree determined by the strength of the case for insanity. Brock v. United States, *supra*, 387 F.2d at 258. The defendant produced not slight evidence, but substantial evidence, of his insanity at the time of and with respect to the offenses charged. In rebuttal, the government presented one expert witness whose testimony did not actually negate any part of the *Blake* test. As we held in *Brock*, the government must produce something more in order to pass appellate muster.[4]

Here the evidence presented would not permit the jury to "go either way;" there were no "material variations between the experts themselves." Mims v. United States, *supra*, 375 F.2d at 144; United States v. Bleckley, 5th Cir. 1973,

---

3. *See* Landress v. Phoenix Mutual Insurance Co., 1934, 291 U.S. 491, 499, 54 S.Ct. 461, 463, 78 L.Ed. 934, 938 (Cardozo, J., dissenting). *See* Milton, Paradise Lost, bk. 2, line 592: "A gulf profound, as that Serbonian bog Betwixt Damiata and Mount Casius old, Where whole armies have sunk."

4. The government did offer in rebuttal the testimony of Dr. Thomas W. Kelly, who had treated the appellant. But when the government attempted to question him concerning the defendant's sanity, he testified that psychiatry was outside of his field of expertise and that he could render no opinion. Dr. Kelly's statement that Bass "appeared" normal to him did not transform the government's case into a strong one. Brock v. United States, *supra*, 387 F.2d at 258, much less one sufficient to prove the defendant sane beyond a reasonable doubt.

There is no need for us to, and we do not, judge the credibility of the government's expert witness, for that would be exclusively a question for the jury. Nor do we need to resolve any "battle by psychiatrist" quantitatively. Nagell v. United States, 5th Cir. 1968, 392 F.2d 934. For there was no battle. In light of our careful analysis of the expert testimony to ascertain whether it might be reconcilable, our view of the adequacy of the factual assumptions on which the expert opinions were based (but with due reverence for the jury's credibility choice prerogative), and our construction of the act itself to see if the peculiar circumstances of the case suggest a particular conclusion, the government's rebuttal vanishes. United States v. Parks, *supra*, 460 F.2d at 745.

475 F.2d 1225. The government made no attempt to discredit the defendant's expert witnesses; on the contrary, the government's Dr. Cline deferred to the judgment of Dr. Oliver. *See* United States v. Pitts, 5th Cir. 1970, 428 F.2d 534; United States v. O'Neal, 5th Cir. 1970, 431 F.2d 695. We conclude that the government did not present sufficient rebuttal evidence to present a jury question on the issue of the defendant's sanity. In a criminal case, it is not sufficient for the government to produce evidence from which the jury could conclude that the defendant was sane by a preponderance of the evidence. In order to present a question for the jury, the government must produce evidence sufficient to convince a reasonably minded juror that the defendant was sane beyond a reasonable doubt. The government failed in that attempt, and thus the convictions cannot stand.

Nevertheless our disposition of this issue does not end the matter, for we are left with the question of whether the appellant is to be retried. We wrote in United States v. Musquiz, 5th Cir. 1971, 445 F.2d 963, 966, that whether and under what circumstances a Court of Appeals should permit an accused to be retried when his conviction has been reversed because the government has not met its burden of proof is itself "a question of some uncertainty." *Compare* Bryan v. United States, 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335, *with* Sapir v. United States, 1955, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426, *and* Forman v. United States, 1960, 361 U.S. 416, 426, 80 S.Ct. 481, 487, 4 L.Ed.2d 412.

> . . The distinction between *Bryan,* on the one hand, and *Forman* and *Sapir* on the other, seems to turn, under the present state of the law at least, on whether the defendant made a motion for a new trial in the district court. . .

United States v. Musquiz, *supra,* 445 F. 2d at 966. We have discerned no change in the uncertain state of the law since *Musquiz.*

▮ Bass is appealing both from the denial of his motion for a directed verdict of acquittal and from the denial of his motion for a new trial. Thus a retrial is permissible. We must decide whether that course is a just one. 28 U.S.C. § 2106. The courts have approved different remedies when holding on appeal that the government has failed to present a jury question on the issue of defendant's sanity. Some have sent the case back for a new trial, without further ado. United States v. Parks, *supra* 460 F.2d at 745–746; Wright v. United States, 1957, 102 U.S.App.D.C. 36, 250 F.2d 4, 10. Others have just as abruptly directed the entry of a verdict of acquittal by reason of insanity. *See, e. g.,* Hartford v. United States, 9th Cir. 1966, 362 F.2d 63, 67. Under the circumstances of this case, we choose a middle path: we reverse and remand the case to the district court where the defendant will be entitled to a directed verdict of acquittal unless the government presents sufficient additional evidence to carry its burden on the issue of defendant's sanity. As we noted earlier, the question of sufficiency of the evidence to make an issue for the jury on the defense of insanity is a question of law to be decided by the trial judge. Nagell v. United States, *supra;* United States v. McCracken, 5th Cir. 1974, 488 F.2d 406. If the district court, sitting without the presence of the jury, is satisfied by the government's presentation, it may order a new trial. Brock v. United States, *supra,* 387 F.2d at 258; Paz v. United States, 5th Cir. 1967, 387 F.2d 428, 431.[5] Even if the government presents additional evidence, the district judge may refuse to order a new trial if he finds from the record that the prose-

---

5. See also Watkins v. United States, 5th Cir. 1969, 409 F.2d 1382, 1386; United States v. Arendale, 5th Cir. 1971, 444 F.2d 1260, 1270; Riggs v. United States, 5th Cir. 1960, 280 F. 2d 949, 955; Clark v. United States, 5th Cir. 1961, 293 F.2d 445, 448; Montoya v. United States, 5th Cir. 1968, 402 F.2d 847, 850; United States v. Weiler, 3rd Cir. 1967, 385 F. 2d 63, 67; United States v. Smith, 6th Cir. 1970, 437 F.2d 538, 541–542; United States v. Lenhard, 2nd Cir. 1970, 437 F.2d 936, 938.

cution had the opportunity fully to develop its case or in fact did so at the first trial. *See* United States v. Peterson, 5th Cir. 1974, 488 F.2d 645.

Because of the possibility of a new trial, we will review the contentions asserted here which might otherwise and needlessly compel a further appeal.

### The Charge on the Burden of Proof of Sanity

■ The district judge initially failed to instruct the jury on the government's burden of proof on the issue of defendant's sanity, but in the last sentence of the court's charge, far removed from the charge on the *Blake* test, the trial judge did state that the government had the burden of establishing the defendant's sanity beyond a reasonable doubt.

When the jury then retired to the jury room for their deliberations, defense counsel objected to the charge on the burden of proof as insufficient. The trial judge recalled the jury to the courtroom and gave the following instruction:

[T]here seems to be some question as to how clear the Court's Charge was in connection with the insanity plea.

. . . Of course, the Government has the burden of proof, or proving, or proving the guilt of the defendant beyond a reasonable doubt, and in a case of this kind, where the, where the Defendant raises the issue of insanity, then the question of insanity is also the burden, the burden is on the Government as to the insanity of the Defendant. And that must be es-

tablished beyond a reasonable doubt, and in other words, if you have a reasonable doubt as to the insanity, then, of course, you would find for the Defendant. But it is, it is your decision to make, but the burden of establishing both the sanity and the, and the acts alleged is on the Government, and they must establish it beyond a reasonable doubt.

We fully recognize that the charge must be viewed as a whole in order to determine whether the objectionable language is prejudicial. But in view of the manner in which the charge was presented and the content of the supplemental instruction, the only plausible explanation for the jury's conclusion that the defendant was sane beyond a reasonable doubt is that the charge misled them as to the proper burden of proof. This instruction could have been heard by a reasonable juror in such a way that he would conclude that the jury could not acquit unless the defendant was found to be *in*sane beyond a reasonable doubt. In a case where the evidence of insanity was substantial, we cannot say that the instruction was not prejudicial.[6]

### The Jury Note and the Supplemental Charge

During its deliberations, the jury sent the following note to the judge:

Judge Cox:
Is a verdict like this acceptable?
Count 1—Guilty
Count 2—Hung
Count 3—Hung
Count 4—Hung
Count 5—Guilty
/s/ P.C. Calloway

---

6. A reasonably intelligent juror could have been thoroughly confused if he heard the instruction once or a hundred times. Syntactically, the antecedent of "that" in line 7 of the instruction is evidently the word "insanity" on the same line. That interpretation, of course, creates the diametrically incorrect burden of proof. Moreover, the entire instruction is written in terms of the "burden as to" or "reasonable doubt as to"

not sanity, but "insanity." And finally, the antecedent of "it" in the last line of the instruction is perfectly unclear in part because "it," a singular pronoun, is attached to at least one plural subject. Although "it" could be understood to mean "both the sanity and . . . the acts alleged," "it" could just as readily mean merely "the acts alleged." Indeed, the jurors may have had no idea what "it" meant.

▮▮▮▮▮ In response to the note, the district judge reconvened the court [7] and instructed the jury in the following manner:

> If you have reached a verdict as to some Counts of the indictment, but not as to others, you may return a verdict as to those Counts. On any count as to which you are not yet in unanimous agreement, I will ask you to return to the jury room and continue your deliberations.

Less than an hour later, the jury returned with its verdict of guilty on all five counts.

The government has contended that the charge given is not an *Allen* charge, because the trial judge was merely sending the jury back for further deliberations. Having viewed the district court's charge in context, we do not accept the government's labelling of the court's language. Although it is not like any *Allen* charge which we have faced before, it serves the same purpose, was given in an *Allen* situation, and is fraught with the same—indeed greater—potential for coercion of the jury. Moreover, to follow the reasoning of the government would lead us to the conclusion that the more coercive the charge the less the need to apply our rules for judging *Allen*-type charges. We prefer

the more logical—and just—conclusion that the district court's supplemental charge is to be judged by the standards which we have demanded of *Allen* charges.[8]

This court has tolerated *Allen* charges so long as the charge makes plain to the jury that each member of the jury has a duty conscientiously to adhere to his own honest opinion and so long as the charge avoids creating the impression that there is anything improper, questionable, or contrary to good conscience for a juror to cause a mistrial. Thaggard v. United States, 5th Cir. 1965, 354 F.2d 735, 739, cert. denied, 1966, 383 U. S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301.

The note from the jury asked only if the stated verdict was acceptable. The district court's response could reasonably have created the impression in the mind of a reasonable juror that such a verdict was not acceptable. Indeed, the instruction indicates that only unanimous agreement is acceptable. Thus, in context, the supplemental instruction was merely an improperly abbreviated *Allen* charge: the instruction met neither of the two requirements set out in *Thaggard*.

We do not decide whether the quasi-*Allen* charge should or should not have been given in this situation. To be

7. The district court did not advise counsel for either the defendant or the government of its receipt of the note or of its contents until the following day, after the jury had returned its verdict and after the jury had been discharged. It is unclear, however, whether the defendant, his counsel, or government counsel were even present in the courtroom when this instruction was read to the jury. The record prepared by the district court reporter contains the routine language "all parties [were] present and presiding as before." Yet under careful and precise questioning by Judge Godbold at oral argument, counsel for the government stated rather persistently that the defendant, his attorneys, and government attorneys were not present at the time the instruction was given. Government counsel relied solely on the harmless error rule in attempting to defend the action of the court below. But if the government's admission at oral argument is correct and the transcript is

incorrect, in light of the probable impact of this charge, the absence of defendant and counsel from the proceedings would not be saved by the harmless error rule. Because of the conflict in the record, we cannot and do not reach the issue. We note only that if the defendant is retried, his right to be present at each and every stage of the proceedings should be carefully honored. *See* Shields v. United States, 1926, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787; Estes v. United States, 5th Cir. 1964, 335 F.2d 609, 618; United States v. Howard, 5th Cir. 1970, 433 F.2d 1, 3; United States v. Glick, 2nd Cir. 1972, 463 F.2d 491, 493; United States v. Marken, 9th Cir. 1972, 457 F.2d 186, 188; Bustamante v. Eyman, 9th Cir. 1972, 456 F.2d 269, 272–274; Annot., 94 A.L.R.2d 270 (1964).

8. The district judge defended the charge as a permissible *Allen* charge in the court's order denying the defendant's motion for a new trial.

sure, we have recognized many times that whether in any case an *Allen* charge should be given, and even when it should be given, rests initially in the sound discretion of the trial judge. Powell v. United States, 5th Cir. 1962, 297 F.2d 318, 322; Annot., 100 A.L.R.2d 177, 180 (1965). Rather, we are concerned with what the charge says and what it fails to say. The content of that charge violated the defendant's right to an uncoerced jury.[9]

### The Sufficiency of the Evidence

As counsel for the government conceded at oral argument, the prosecution witnesses did not perform to the expectations of the government; the result was not an exemplary exercise in proving the defendant guilty of the crimes charged. As best we could, we have reconstructed the evidence presented at the trial in an attempt to visualize the reality which faced the jury in their deliberations.

We note at the outset that appellant has not challenged the sufficiency of the evidence with respect to Count I of the indictment, which charged that Bass knowingly and intentionally acquired Demerol upon a forged prescription. Appellant does challenge the sufficiency of the evidence with respect to Counts II through V. Appellant was sentenced to four years imprisonment on Count I, and four years on each of Counts II through V, to run concurrently with each other and consecutively with Count I, a maximum sentence of eight years in the penitentiary.

With respect to each of these challenged Counts, we view the evidence in the light most favorable to the government, in order to determine whether a reasonable juror could have concluded that the evidence excluded every reasonable hypothesis, except that of guilt. Glasser v. United States, 1940, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; United States v. McGlamory, 5th Cir. 1971, 441 F.2d 130. We must sustain the verdict if there is substantial evidence, direct or circumstantial, to support it. "Substantial evidence" in this context means evidence that a reasonably minded jury could accept as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt. United States v. Barfield, 5th Cir. 1971, 447 F.2d 85; United States v. Reid, 5th Cir. 1971, 441 F.2d 1089; United States v. Warner, 5th Cir. 1971, 441 F.2d 821.

*Count II.* The government presented pharmacist James Kidwell, who testified that the defendant presented a prescription for Demerol which was not filled because Kidwell "felt like it was not a proper prescription." The allegedly forged prescription was not presented in court, for reasons unknown to us and unexplained by the government. No testimony was elicited from any of the doctors who had written prescriptions for Bass indicating one way or the other that a prescription noted in Count II had been forged. Nor was any circumstantial evidence presented which supported the government's case on Count II.[10]

---

9. We last considered the propriety of the *Allen* charge in United States v. Bailey, 5th Cir. 1972, 468 F.2d 652, aff'd en banc 1973, 480 F.2d 518. The panel decision was highly critical of the *Allen* charge but affirmed convictions obtained after the use of such a charge because it felt bound by Fifth Circuit precedent. On rehearing en banc, six judges dissented from that part of the majority opinion which refused to prohibit further use of the "dynamite charge" in this Circuit in favor of the ABA standard. Dissatisfaction with the *Allen* charge is not a new phenomenon in this or any other Circuit. Some have done more than merely sound their fury. *See* United States v. Bailey, *supra*, 468 F.2d at 667–668 and cases cited therein.

10. The government alleged that Dr. Bost's forged signature appeared on the prescription. And Dr. Bost did testify that "to the best of [his] knowledge" he had received a telephone call from the pharmacy regarding the prescription alleged to be a forgery *in Count I*, and that he had not issued any prescriptions to Bass *after* the telephone call. The pharmacist testified that the call was made March 11, 1972, the date named in the indictment as the date of the Count II prescription. Dr.

Thus the government's case consisted of nothing more than the testimony of a pharmacist who said nothing more than that he "felt like it was not a proper prescription." We conclude that the government's case did not amount to "substantial evidence" which would warrant any reasonably minded jury in finding the defendant guilty beyond a reasonable doubt.

■■■ *Counts III and IV.* Almost identical circumstantial evidence was offered by the government on both counts. On count III, the government introduced into evidence a prescription dated February 20, 1972, signed by Dr. Thomas W. Kelly, prepared for Bruce Bass, and on which the quantity "three" had been stricken out and the word "eight" substituted.

Dr. Kelly testified that the three had been changed to an eight and testified that he (1) did not remember writing the prescription, (2) did not remember where the prescription had been written, (3) did not remember when the prescription had been written, and (4) did not remember to whom the prescription had been given. After testifying that he had on several occasions been called by the drugstore in order to make changes in prescriptions for Bass, he stated that he could not recall whether he had been called by the drugstore in this case or whether he himself had called the drugstore to make a change. The pharmacist who filled the prescription testified that he did not make the change himself, that he could not recall ever having seen the defendant, and indeed would not know Bass if he saw him now.

On count IV, the government introduced into evidence a prescription dated December 25, 1971, as to which Dr. Kel-

ly testified that "it appears the figure [quantity] has been changed" from a "3" to an "8". The pharmacist who filled the prescription testified that he himself made no changes in the prescription. And as in count III, Dr. Kelly testified that the prescription appeared to be one of his, but he could not remember having written the prescription, did not remember where he had written it, or when, or to whom he had given it.

From the case of circumstantial evidence presented by the government on counts III and IV, the jury would have to draw the following inferences in order to convict on either or both counts: (1) that the prescription was given to Bass and not to someone else, (2) that Bass, and not someone else, presented the prescription at the drugstore to be filled, (3) that the doctor did not call the drugstore and ask that the quantity be changed, (4) that the drugstore did not call the doctor to ask whether the quantity should be changed, (5) that no other pharmacist in the store altered the quantity shown on the prescription. Moreover, there was no testimony suggesting that the alteration in the prescriptions was in Bass' handwriting, nor was there testimony suggesting that the changes had in fact been made by him. Faced with the hypotheses of innocence mirroring the above inferences and faced with a simple lack of evidence proving the defendant's guilt, we cannot believe that a reasonably minded jury could have found the defendant guilty beyond a reasonable doubt on either count.[10a]

■■■ *Count V.* Unlike the charges in counts I through IV, this count alleged that Bass obtained Demerol not by forgery but by "misrepresentation, fraud, deception and subterfuge."

---

Bost was never asked whether he prescribed Demerol for Bass on or about the date alleged in the indictment in Count II. And in fact, he was asked no questions which directly related to Count II even though it was alleged that the prescription bore his forged signature.

10a. We are strengthened in our belief by the fact that the jury indicated to the district judge in its note that it could not reach a verdict on counts III and IV. The jury returned a verdict of guilty on these counts only after the district court had responded to the note with an impermissibly coercive *Allen* charge.

The district court, in instructing the jury, stated that count V charged Bass with having obtained Demerol "from two different physicians without telling either physician he was on the same day obtaining Demerol from the other." And to be sure, Dr. Bost testified that he did not know that Bass either had received or was to receive a prescription for Demerol from another doctor on the same day. In answering the same question from government counsel, Dr. Kelly gave the same response. Thus the government had established the operative fact of concealment.

But the criminal offense created by 21 U.S.C. § 843(a)(3) requires more than the fact of concealment. We read this statute to require a material misrepresentation, fraud, deception, or subterfuge which is a cause in fact of the acquisition of a controlled substance.[11] In this case, the government elicited testimony neither as to the concealment's materiality nor as to its effect on the prescribing doctors' actions.

The government's attempt to prove these elements of the offense was limited to one question addressed to Dr. Bost:

Q [government]   All right, had you known that the Defendant had received another prescription from another doctor for the same narcotic substance, would you have issued this prescription?

A [Dr. Bost]   This would depend on whether or not I had examined the patient and felt that he had needed it.

The government then passed the witness, without determining whether the concealment had even contributed in part to the issuance of the prescription. The government asked the same question of Dr. Kelly, but upon objection withdrew it. Thus there is no testimony from Dr. Kelly indicating that the concealment had any effect whatever on the doctor's decision to issue Bass a prescription.

In spite of the lack of testimony, we believe that a jury might reasonably have inferred materiality. But in light of Dr. Bost's testimony, and the absence of any other evidence, we cannot believe that a reasonably minded jury could have inferred reliance on the concealment. Thus, as to this count, we find that the government failed in its burden of proof.[12]

---

11. 21 U.S.C. § 843(a)(3) makes it unlawful "to acquire or obtain possession . . . *by* misrepresentation, fraud, . . . , deception, or subterfuge." (emphasis added). *See* footnote 1, *supra*. The statute does not proscribe the mere making of a false statement or representation, or the making of a false statement or representation with an intent to influence another's action but without actual influence. The statute explicitly includes an element of causation. *Cf.,* for comparison, 18 U.S.C. §§ 1001, 1008, 1010, 1012, 1014, 1025; Kay v. United States, 1938, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607; *see also* Kovens v. United States, 5th Cir. 1964, 338 F.2d 611, 617; Bartlett and Company, Grain v. United States, 10th Cir. 1965, 353 F.2d 338, 343; United States v. Goberman, 3rd Cir. 1972, 458 F.2d 226, 229; United States v. Stamp, 1971, 147 U.S.App. D.C. 340, 458 F.2d 759, 769–771; United States v. Bruce, 5th Cir. 1973, 488 F.2d 1224.

12. There was evidently some confusion as to the government's burden of proof on count V. On cross-examination, defense counsel attempted to elicit testimony to prove that the defendant's physical condition would have been the only consideration in the prescribing doctor's decision to issue a prescription in spite of the defendant's having already obtained another prescription for the same drug. The government objected to this line of questioning on the ground that the only issue presented was whether or not prescriptions had been altered or forged, and the district court sustained the objection. On several occasions, defense counsel attempted to inquire as to the defendant's physical condition at the time it was alleged that the doctors had been deceived into prescribing for Bass, on each occasion the government objected, and on each occasion the court sustained the objection. But on direct examination of Drs. Bost and Kelly, the government had elicited testimony as to count V, a charge which was not based upon forgery or alteration. Thus defense counsel's persistent attempt to question the doctors as to the defendant's medical condition was addressed to matters covered by the government's direct examination.

As we have noted before, full cross-examination addressed to a relevant area of inquiry

■ Since we have found the evidence insufficient to present a jury question on counts II through V, in order for the government to earn a new trial on these counts, it must, in addition to satisfying the trial court on the issue of insanity, present such additional evidence as the trial court, sitting without a jury, considers sufficient to carry its burden. Again, however, even if the government presents sufficient additional evidence on any or all of counts II through V, the district judge may refuse to order a new trial if he finds that the prosecution had the opportunity fully to develop its case or in fact did so at the first trial.

### The Publication Requirement of 21 U.S.C. § 812

■ Last, and surely least, appellant has contended that there is no violation of 21 U.S.C. §§ 843 and 846 because 21 U.S.C. § 812 required that the schedules of controlled substances be republished "on a semi-annual basis during the two-year period beginning one year after the date of enactment of this subchapter . . ." The subchapter was enacted on October 27, 1970. Thus the first republication should have occurred on October 27, 1971, followed six months' later on April 27, 1972 with another republication, and so on. In fact, the first republication occurred April 20, 1971, to be effective May 1, 1971, and the next on May 12, 1972, its effective date relating back to April 27, 1972. Appellant argues that since there was no republi-

cation on October 27, 1971, there could be no violation of the statute. We are not persuaded, for we fail to see how the government's failure to republish on October 27, 1971 in any way prejudiced the defendant, deprived him of notice, or rendered the statute inoperative. Moreover, appellant has offered no proof of prejudice, or lack of notice, and no reason why the provision should not be construed as directory only, so that each schedule remains in effect until it is actually revised. We see no reason to adopt the rather narrow logic advocated by appellant and thus to penalize a government bureaucracy which is usually late, for being early.

### Conclusion

The defendant is entitled to a directed verdict of acquittal by reason of insanity, unless the government can satisfy the district judge that it has sufficient additional evidence to carry its burden on that issue. Similarly, the government may not retry the defendant on counts II through V unless it can present sufficient additional evidence to satisfy the district judge that its burden of proof on those counts has been met. The district judge should also consider whether the prosecution has already had a full opportunity to present its case and thus whether it is fair to subject the defendant to another trial. We consider this disposition of the case wholly just and necessary in order to save the general public, the district court, the government, and the defendant from need-

is a right, and while the scope of cross-examination is within the discretion of the trial judge, this discretionary authority to limit cross-examination comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment. Grant v. United States, 5th Cir. 1966, 368 F.2d 658; United States v. Greenberg, 5th Cir. 1970, 423 F.2d 1106, 1108; Fountain v. United States, 5th Cir. 1967, 384 F.2d 624, 627 n. 2. Thus it was error for the trial court to refuse defense counsel's attempted cross-examination addressed to the issue of Bass' medical condition. But because of our disposition of this case, we need not decide whether the error

was harmless or of constitutional and reversible magnitude. We note only that should the case be retried, defense counsel should be permitted on cross-examination to disprove an element of the offense contemplated by count V—causal connection between the concealment and the acquisition of the drug—if the government has elicited testimony pertaining to count V on direct. Pearson v. United States, 5th Cir. 1968, 389 F.2d 684, 688; Beaudine v. United States, 5th Cir. 1966, 368 F.2d 417, 424; Davis v. Heyd, 350 F.Supp. 958, 969 (E.D.La.1972); Smith v. Illinois, 1968, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956.

less additional expense and other burdens. *See* 28 U.S.C. § 2106.

Reversed and remanded to the District Court for proceedings not inconsistent with this opinion.