UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael V. COSTELLO,
Defendant-Appellant.

No. 83–3691.

United States Court of Appeals,
Eleventh Circuit.

May 20, 1985.

William J. Sheppard, Jacksonville, Fla.,
for defendant-appellant.

John E. Steele, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before RONEY and CLARK, Circuit Judges, and SIMPSON, Senior Circuit Judge.

CLARK, Circuit Judge:

## I. FACTS

Michael V. Costello was convicted on three counts of mailing threatening communications to a federal judge in violation of 18 U.S.C. § 876[1] and was sentenced to five years imprisonment on each count with the sentences to run consecutively. In this appeal he raises four issues: (1) whether the district court abused its discretion in denying defendant's motion for a continuance of the trial; (2) whether the district court erred in refusing to instruct the jury on insanity and involuntary intoxication; (3) whether the district court abused its discretion in denying defendant's motion for a continuance of the sentencing; and (4) whether the defendant was improperly denied effective assistance of counsel at sentencing. We affirm.

On February 9, 1983, Mr. Costello, an inmate at the Florida State Prison in Starke, Florida received an opinion and order from the Honorable Susan H. Black dismissing a lawsuit he had filed regarding prison conditions. In response he wrote the following letter to Judge Black:

Dear Judge Black:

I have received this date your Opinion and Order entered in the above cause on 7 February 1983. Said Opinion, particularly section 3, is replete with inapplicable law and ignores substantial constitutional issues.

For seventeen months, this case remained dormant, only for you to strike a death blow with your insipid and absurd rendition of the facts and law.

Your opinion will most surely be reversed by the Eleventh Circuit. Your opinion only sanctions the oppression and victimization of prisoners by corrupt and unconcerned prison officials.

You merely assist in the oppression of prisoners and reduce to a farce the concept of prisoners' rights. You are an oppressive fascist and a disgrace to the Judicial Branch.

Your deeds and duplicity regarding the oppression of prisoners is deserving of nothing less than death. You should be subjected to revolutionary justice. I hereby sentence you to death.

When the time is right, I shall kill you and your family. You deserve nothing less. You are a cancer on the System of Justice and which is reduced to a farce by you and your kind.

Death shall overtake you. I shall kill you. If history cannot be written with the pen, then it shall be written with the gun.

The Glorious Revolution, Michael V. Costello

On February 10, 1983 he wrote a second letter:

Dear Fascist Black:

The oppressors are gloating over their ill-deserved victory as represented by your order in the above cause on 7 February 1983.

Did you think my letter of 9 February 1983 would be the last? But this one shall. Your death is now but a mere formality. It has been arranged, and the judiciary shall be the better without you, you who disregards applicable law and denies meritorious litigation on the basis of frivolous decisional law and dubious rhetoric.

For this you shall die, and I shall be your executioner. The revolution will

---

**1.** 18 U.S.C. § 876 states in pertinent part:

Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

not be aborted. I shall be victorious, and the taste of your death shall sweeten the victory.

You are doomed. Revolution forever. Michael V. Costello.

Then on February 13, 1983, Mr. Costello mailed this third and final letter to Judge Black:

Fascist Black:

The color of this ink is not near the color of red that will flow before your totalitarian eyes, for revolutionary justice shall be sole vengence, first upon your dear ones, and once you have tasted the agony of victimization, your worthless existence will cease.

You feel secure in your citadel of power, knowing that I am incarcerated. But you shall learn that the walls of my prison cannot contain my contacts with those who shall be your executioners; for, contact them, I already have, and the death of you and yours is but a matter of time.

But do not think that you will be the first to experience my justice. Only last year, an inmate who betrayed me to the scum prison authorities suffered an early demise through my justice.

What appeared to be a mere heart attack was in fact a drug-induced death. Patrick Connelly lives no more because of his perfidious ways.

So, too, shall your demise arise, but the method shall be known not to you, only to me and mine. Your time grows short.

Revolution forever, Michael V. Costello.

These letters were turned over to the FBI by court personnel. Fingerprints found on one of the envelopes matched the appellant's prints. An agent took copies of the letters and went to interview Mr. Costello. After being advised of his *Miranda*

rights, appellant identified the copies as the letters he had written to Judge Black. Additionally, Mr. Costello signed a statement admitting that he wrote and mailed the letters and further that he had taken steps to have Judge Black killed.

After several continuances,[2] trial was set for September 7, 1983. On August 30, 1983, defendant filed a motion to proceed *pro se* and for a hearing on the motion the morning of trial.

On September 7, 1983 defense counsel's motion to withdraw and appellant's motion to proceed *pro se* was granted. However, counsel was appointed as standby counsel and thus ordered to observe the trial and assist appellant. Immediately before trial, the court denied another request for a continuance. The basis of this motion was that a continuance was needed to secure the presence of Dr. Van Fleet, a psychologist who had seen Mr. Costello on several occasions. Appellant maintained that Van Fleet was critical to his defense, which was essentially an insanity defense based upon diminished capacity due to drug use.

During trial, appellant renewed his request for a continuance in order to secure the appearance of Dr. Van Fleet. However, Van Fleet's current address could not be verified.[3] The trial court examined a proffer of two medical reports prepared by Van Fleet. Based upon this proffer, the trial court concluded there was no indication that Dr. Van Fleet would be of the opinion or testify that Costello was insane when he wrote the letters.

Appellant testified on his own behalf. Essentially his testimony focused upon the fact that he had been in solitary confinement for two years prior to writing the letters to Judge Black. He described the conditions which existed at the prison and the effects these conditions had upon him.

---

**2.** These continuances were for various reasons. One was granted after the appellant's motion to disqualify all the judges of the Middle District of Florida was granted. Chief Judge Godbold assigned the Honorable Orinda P. Evans from the Northern District of Georgia to be the trial judge.

**3.** Neither appellant or his counsel had spoken to Dr. Van Fleet at any time prior to trial or made any vigorous attempt to contact him.

Appellant further testified that, due to the mental and psychological stress of incarceration, he began to use drugs heavily. It was while he was in a drug induced state, he maintained, that he wrote the letters to Judge Black.

At the conclusion of trial, Costello moved for a jury instruction on involuntary intoxication, temporary insanity and insanity. The trial court denied these requests on the basis that appellant had not produced sufficient evidence to warrant the instructions. Costello was subsequently found guilty on all three counts.

On the morning of the sentencing hearing, November 23, 1983, Costello swallowed the top of a disposable razor blade in an apparent suicide attempt. He received medical treatment and was given medication, i.e. valium. The treating physician in a letter to the court indicated that the effects of the valium would be dissipated by that afternoon. When the appellant appeared for sentencing he moved for a continuance of the sentencing hearing. Costello indicated to the court that he had not examined the presentence report which was given to him several days earlier and thus was not prepared to go forward. He also indicated the medication and trauma of the suicide attempt were grounds for continuing the sentencing hearing.

The court recessed the sentencing for approximately one hour to allow the appellant time to collect himself. During the recess and at appellant's request, standby counsel resumed representation.[4] Standby counsel made another request for a continuance in order to prepare for the hearing which was denied. When the sentencing hearing resumed, the court highlighted the

portions of the PSI which it deemed to be most relevant. Neither the appellant nor counsel contested the accuracy of this information. The court then gave the appellant an opportunity to speak to the court regarding sentencing and he declined. The court then sentenced Costello to five years on each count with the sentences to run consecutively to one another as well as to the state sentence he was then serving. This was the maximum sentence Costello could have received.

## II. THE LEGAL ISSUES IN CONTEXT

### A. *Failure to Grant the Trial Continuance*

Both parties generally[5] agree that the correct standard for evaluating the district court's denial of appellant's motion for a continuance is to be found in *Dickerson v. State of Alabama,* 667 F.2d 1364 (11th Cir.1982). In *Dickerson* the court delineated several factors to be considered in evaluating such a claim. Those factors were: (1) the diligence of the defense in interviewing the witness(es) and procuring his presence; (2) the probability of procuring his testimony within a reasonable time; (3) the specificity with which the defense is able to describe the witness' expected knowledge or testimony; and (4) the degree to which such testimony is expected to be favorable to the accused and the unique or cumulative nature of the testimony. 667 F.2d at 1390, *see also Hicks v. Wainwright,* 633 F.2d 1146, 1149 (5th Cir. Unit B 1981).

■ Applying the above factors to the facts of this case we find that the district court did not abuse its discretion in failing to grant the continuance. Leaving aside the question of diligence,[6] the other factors

---

4. Original standby counsel was William Sheppard. Counsel who appeared and represented Costello at the sentencing was Elizabeth White, who worked in the law offices of William J. Sheppard.

5. Although the appellant maintains that the trial court should have been more lenient because he was representing himself.

6. It appears to us that Costello did not use reasonable diligence in attempting to secure the presence of Van Fleet. However, due to the fact

that Costello and his counsel disagreed over the direction the defense should take and this disagreement apparently led to Costello's decision to proceed *pro se,* we will leave this factor aside. At the hearing on Costello's motion to proceed pro se his counsel stated:

Judge, I think there is, and I'll be very candid and I have been so with the Government. Mr. Costello is a person who has been institutionalized for a long time, and they are a lot of people who have a lot of spare time, and they read the law books too. He has a theory of

enunciated in *Dickerson* countenanced against another continuance. First, there was no positive indication that Van Fleet could have been located and secured as a defense witness within a reasonable time. No one knew his exact whereabouts and attempts made during trial to locate him were unproductive. He had not been contacted by the defense nor had he agreed to testify on the defendant's behalf.

Second, the defense could not with any specificity describe his expected testimony. All we know and all the trial court knew was that Van Fleet had examined Costello on several occasions.

Finally, there was no reason to expect that the testimony would be favorable. The trial court examined several records of Van Fleet's regarding consultations with Costello and determined that Van Fleet's testimony would probably not be favorable. At the very least, there was no indication that it would be favorable. We have likewise examined those records and concur in the district court's conclusion. Furthermore, we add that a review of Costello's medical records indicates that he, on numerous occasions refused "call out" for visits with Van Fleet and other prison mental health staff. His frequent refusal to meet with various doctors substantially weakens his testimony at trial that: "while incarcerated at the Florida State Prison, I have made repeated requests for what is called psychological services and counseling.... It has been the policy of the Florida State Prison that for, what they call security reasons, there is an inability to render consistent or at least regular services for those who request it."

We affirm the district court on this issue.

### B. *The Jury Instruction*

Appellant maintains that the district court erred in refusing to give proposed jury instructions on insanity, temporary insanity and involuntary intoxication. The trial court denied these requests on the basis that appellant had not produced sufficient evidence to warrant the instruction.

 A defendant may not have the jury instructed on an issue where there is no evidence to support it. *United States v. Scheufler*, 599 F.2d 893, 896 (9th Cir.1979). In making the determination of whether sufficient evidence has been presented to justify a jury instruction, each case must be decided on its own facts. *United States v. Davis*, 592 F.2d 1325, 1329 (5th Cir.1979).

Costello's defense was not an ordinary insanity defense but rather was one based upon diminished capacity due to drug use.[7] The evidence in support of the proposed instruction was appellant's testimony, described previously in this opinion, relating to his drug use in order to ease the agony of incarceration. A psychologist, who was called by the appellant, testified that Costello manifested no signs of insanity.

In *Blake v. United States*, 407 F.2d 908, 911 (5th Cir.1969) (en banc) the court stated that "if there is some evidence supporting the claim of insanity, ... the issue must be submitted to the jury.... This means only slight evidence." Appellant maintains that, under the "slight evidence" language of *Blake*, he was entitled to the jury instruction because of his unrebutted trial testimony.

 The issue, however, is not quite so simple. The crime for which appellant was charged, mailing threatening communications to a federal judge, is a general intent crime. *See United States v. DeSha-*

---

the case with which I don't fully agree, that he wants to run as a defense.

We note though that several continuances had already been granted. Furthermore, some four months before trial Costello's entire prison medical file had been sent to defense counsel. It was reviewed both by Costello and his counsel. Both stated that Van Fleet's treatment of Costello was obvious from the file. Neverthe-

less, no effort was made until the eve of trial to subpoena Dr. Van Fleet.

7. *The Court:* Do you plan to present an insanity defense?

*Mr. Costello:* Insanity, if we are speaking in terms of *McNaughten,* if you are talking in terms of diminished mental capacity, yes, your honor.

*zo,* 565 F.2d 893 (5th Cir.1978). Appellant concedes this fact. Voluntary intoxication cannot negate a general intent crime. *United States v. Hanson,* 618 F.2d 1261, 1265 (8th Cir.1980). In *United States v. Romano,* 482 F.2d 1183, 1196 (5th Cir.1973) the court held that "being voluntarily under the influence of drugs is not a legal equivalent of insanity, although it may be evidence that the defendant was incapable of forming a specific intent to commit the crimes with which he or she is charged." Here, no specific intent was required. Furthermore, appellant's testimony only went to show voluntary drug use, not involuntary drug use as was demonstrated in *Bass,* infra.

Costello relies heavily on the case of *United States v. Bass.* In *United States v. Bass,* 490 F.2d 846 (5th Cir.1974) two psychiatrists testified that Bass was, at the time of the crime, "by reason of mental disease or defect, lacking in substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." *Id.* at 849. Thus, Bass was, by the doctor's testimony, squarely within the legal definition of insanity applicable in this circuit as articulated in *Blake, supra.*

Bass' mental disease defect was in part due to drug use. However, he had a severe physical illness that caused extreme pain, high temperatures which at times was followed by lapses into delirium. In treating his illness, doctors prescribed Demerol, the only drug which had any effect on the pain. As a result of this treatment, Bass became addicted to the drug. The physicians testified that his involuntary addiction to drug use, *in conjunction with* Bass' chronic anxiety over his illness and awareness of the fact that he would be forever dependent on Demerol for pain relief, constituted sufficient evidence of a "mental disease or defect" within the meaning of *Blake.* 490 F.2d at 850.

■ *Bass* is distinguishable from the facts here. The various drugs Costello used were not prescribed by a physician to combat a physical illness. Costello's drug use was a voluntary response to the conditions of incarceration. Furthermore, unlike Bass, Costello presented no expert testimony to indicate that he was lacking in the capacity to conform his conduct to the requirements of the law or to appreciate the wrongfulness of this conduct. In fact, experts called by Costello testified that he manifested no indication of insanity. The only evidence in support of his defense was his own testimony.

Finally, we note that appellant testified that the conditions that led him to use drugs and subsequently to write the letters were common to all the inmates, some 1,200, at the Florida State Prison. Were we to accept appellant's theory of diminished capacity, any inmate, who voluntarily used drugs, would be entitled to an insanity defense. We are aware that prison is not a pleasant place. It is not intended to be. The fact of incarceration cannot legitimize the behavior demonstrated by the appellant in this case. We agree with the district court that Costello was not entitled to the requested jury instructions.

### C. *Failure to Continue the Sentencing Hearing*

On the day appellant was to be sentenced, he swallowed a disposable razor blade top. He was treated by a physician and given valium. Appellant told the district court that he had received the PSI report two days earlier but had not had time to review it. The district court said:

> Mr. Costello does not appear to be in the peak of health as he stands before me, but I am not so sure that he is not able to speak for himself in matters that are important as regards to his sentencing.

The decision was based upon the court's observation of Costello, as well as a letter from the treating physician that it was his impression that "the medication should not be a factor after three or four o'clock this afternoon." The court did give Mr. Costello approximately an hour or so after first convening court for him to collect himself. The sentencing hearing then took place around 4:45 that afternoon.

Normally, it is within the discretion of the trial court to determine whether to continue a hearing on the grounds of physical or emotional distress. *United States v. Bernstein*, 417 F.2d 641 (2d Cir. 1969). Costello had attempted suicide that morning. He had subsequently been given valium intravenously. Although the physician indicated that the effects of the drug should be dissipated by that afternoon, no impressions were given regarding Costello's ability to proceed as his own counsel. Up until the sentencing hearing he had been proceeding *pro se*. He told the court that he had not reviewed the presentence report.[8] He was subsequently given the maximum possible sentence.[9]

The district court did highlight to Costello the parts of the presentence report it deemed to be most significant. Neither he nor standby counsel contested any of these findings. We find this to be a close issue, due to his suicide attempt, the medication, and the fact that he had not read the report; however, we hold that the district court did not abuse its discretion in denying the motion for a continuance.

However, in conclusion, we note that the district court stated at the sentencing hearing:

> It would be a lot easier for me to decide the right sentence if I knew exactly what your parole date is going to be from the State system. However, I do not know that.

Fed.R.Crim.P. 35 permits the district court to consider a motion to reduce the sentence of a person convicted of a federal crime within "... 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal...." Costello's actual or presumptive state parole date, any inaccuracies he believes to be present in the PSI report, as well as any other facts Mr. Costello believes would support a reduction in his sentence can and should be presented to the district court in a rule 35 motion.

The conviction of the appellant is AFFIRMED.

---

8. Standby counsel stated she was not prepared to act as Costello's advocate and moved for a continuance which was denied.

9. However, the district court did sentence Costello pursuant to 18 U.S.C. § 4205(b)(2) which provides "the court may fix the maximum sentence of imprisonment to be served in which

event the court may specify that the prisoner may be released on parole at such time as the Commission may determine." This allows an inmate to be eligible for parole before serving one-third of his sentence, the standard initial parole eligibility date specified in 18 U.S.C. § 4205(a).