**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Joseph D. FONTENOT,**
**Defendant–Appellant.**

No. 79–5512.

United States Court of Appeals,
Fifth Circuit.

Oct. 24, 1980.

Rehearing Denied Dec. 5, 1980.

Stephen R. Wolfson, William J. Zeutzius, Pasadena, Cal., for defendant–appellant.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Section, Thomas M. Preston, Jr., Robert E. Lindsay, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for the United States.

Before RONEY, HILL and FAY, Circuit Judges.

FAY, Circuit Judge:

Appellant seeks reversal of his conviction for violating Section 7206(1) of the Internal Revenue Code, which makes it unlawful to willfully make false statements in connection with the filing of a tax return. Appellant was found guilty on two counts of violating this section, one count with respect to a 1972 corporate tax return and the other with respect to the 1973 tax return for that corporation. Appellant was sentenced to six months imprisonment on the first count and three years probation on the second count. We affirm.

Appellant owned and operated Playground Optical Co., Inc., a corporation whose business was the manufacture and sale of eyeglasses and hearing aids. The corporation had a store in Fort Walton Beach, Florida and one in Pensacola, Florida. The sales invoices for the Fort Walton Beach store, at which appellant worked, were registered on two separate machines. The first machine was used each day until invoices totalling approximately two–hundred and twenty dollars had been recorded. At that point, all other invoices were recorded on the second machine. Only the money received with respect to the invoices from the first machine, however, were recorded on the corporation's books and deposited in the bank account of the Fort Walton Beach store. It is the disposition of the proceeds from the transactions recorded on the invoices from the second machine around which this case revolves. Appellant removed these invoices daily. A government witness, one of appellant's employees, testified that they were thrown in the trash, from which he removed them each day.[1] Appellant denied throwing the invoices away, asserting that they were kept in the store. Regardless, it is undisputed that some of the money received with respect to sales covered by those invoices was transferred for accounting purposes to the Pensacola store and recorded on the corporation's books as originating there. Appellant contends that all of the monies received with respect to those invoices were reported on the corporation's tax return. The government argues that only a portion of the proceeds from those invoices were transferred and reported; the remainder, in the form of cash, going unreported. The corporation's books reflect the total amount of the invoices for the Pensacola store, that is those which originated there and those which were transferred there from the Fort Walton Beach store, as a figure substantially less than it would have been had all of the second machine invoices from the Fort Walton Beach store been transferred and recorded as they were to have been. Simply put, the corporation's books did not reflect the full amount invoiced at both stores. By transferring the funds between the stores some was "lost."

On appeal, appellant asserts the following errors.

1. *Sufficiency of the Evidence*

Appellant contends that the government failed to establish a *prima facie* case and, therefore, it was error for the trial court to deny his motions for acquittal. We find no merit in this argument.

---

1. The reason Mr. Williams, the government's witness, removed the invoices from the trash each day is an integral part of this case. Apparently Mr. Williams could not convince Mr. Fontenot, the appellant, to give him a raise, at least not in the conventional sense. Rather, appellant offered to give Mr. Williams a 3% cash commission on all invoices from the second machine. Mr. Williams agreed to this but, concerned that he might be cheated, retrieved the invoices and kept them as a record of what he was owed.

Appellant correctly points out that in order to establish its case the government must prove both falsity as to a material matter in the tax return and knowledge of such falsity by the accused at the time the return was signed. *United States v. Miller*, 545 F.2d 1204, 1212 (9th Cir. 1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977); *United States v. Cashio*, 420 F.2d 1132 (5th Cir.), *cert. denied*, 397 U.S. 1007, 90 S.Ct. 1234, 25 L.Ed.2d 420 (1970). The role of this Court is to determine whether the evidence, when viewed in a light most favorable to the government's position, *see Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), is such that the trier of fact could reasonably conclude that appellant was guilty beyond a reasonable doubt.[2] *United States v. Fox*, 613 F.2d 99, 101 (5th Cir. 1980). We hold that there was more than enough evidence from which the jury could reach that conclusion. Several witnesses testified, and appellant admitted, that the corporate books reflected an invoice amount for the Pensacola store substantially less than that amount which would have been reflected had all invoices which were to have been "transferred" actually been recorded. The record also indicates that the amount of income reported on the corporation's tax return was substantially less than the invoice amount, after that amount was corrected to reflect the invoices not previously recorded. On that basis alone, the jury could have reasonably concluded that the appellant under–reported the corporation's income. The jury was not required to accept appellant's assertion that the total amount of money actually *received* was, for some unexplained reason, substantially less than the corrected invoice amount. There was also substantial evidence from which the jury could have concluded that appellant was aware of the falsity of the tax return when he signed it and that he did so willfully. Appellant admitted that the signature on the tax return was his. He admitted that he had reviewed the information contained therein before signing it. Moreover, the scheme for diverting funds from one store to another, with the unrecorded invoices as its central feature, was accomplished by appellant's own acts.[3] This is sufficient evidence that appellant acted willfully and knowingly when he filed the false tax return.[4]

2. The fact that we are considering the trial court's denial of appellant's motion for acquittal under Rule 29(a), Federal Rules of Criminal Procedure, rather than the substantiality of the evidence regarding the trial as a whole, is immaterial. The standards of review are substantially identical. *United States v. Figueroa–Paz*, 468 F.2d 1055, 1058 (9th Cir. 1972).

3. At trial, appellant offered an explanation to show that his motive for diverting the proceeds from the invoices of the second machine at the Fort Walton Beach store was other than tax evasion. Apparently, the rent due for the Fort Walton Beach store was determined by applying a formula, one of the main components of which was the total sales from that store. By diverting some of the proceeds from his sales to the Pensacola store, appellant argues that he was only trying to reduce his rent. In fact, appellant offered to make restitution to his landlord for the amount by which he was cheated. Appellant also offered to explain the transfer of funds as an effort to help the financially unstable Pensacola store. It was allegedly necessary to make that store appear to have greater revenues than it actually had in order to obtain a better location for the store in the shopping mall it was in. This relocation, in turn, would put the store back on the road to financial recovery.

It is apparent from the verdict that the jury either disbelieved these explanations or believed that tax evasion was an additional motive.

4. Regarding the proof of the willfullness of his conduct, appellant contends that the government obfuscated the issue by attempting to portray him as a person whose standard of living was in excess of his regular income. Basically, appellant asserts that the jury found he had acted willfully solely on the basis of the government's insinuation that he was a bad person. In reality, however, appellant had attempted during the investigation to explain away certain sums of cash as representing gifts made to his wife by her purported father. The government raised the issue at trial, as it was entitled to do, because proof of the falsity of appellant's explanations is relevant to the question of the willfullness of his conduct. *United States v. Newman*, 468 F.2d 791, 794 (5th Cir. 1972), *cert. denied*, 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973). For that reason, as well as the fact that appellant will not be heard to object to the government's use of evidence regarding matters raised by appellant during the

## 2. *Abuse of Judicial Discretion*

■ Appellant presents a laundry list of complaints against rulings and remarks of the trial court, each of which it is asserted constitutes error. For the reasons set forth herein, we disagree. Appellant's most substantial complaint [5] is that the trial court unduly limited his right to recross–examine the government's chief witness, Mr. Harry Williams, Jr. Particularly, appellant asserts error in the trial court's refusal to allow the fact of inconsistent statements, as to promises made by the government regarding future prosecution of that witness, to be pointed out to the jury on recross–examination.

On direct examination the witness was asked if he had received rewards or promises of rewards from the government in exchange for his testimony. He responded in the negative. On cross-examination that witness was asked specifically, several different times, if he had received promises of immunity or an understanding that "as a practical matter you would not be prosecuted." Again he responded in the negative. On redirect examination the government elicited from the witness the fact that he had been told that as a practical matter he would not be prosecuted. At the end of redirect, the trial court denied appellant's request to recross–examine the witness for the purpose of pointing out the inconsistency in his statements. The court denied this request on the grounds that no new area of questioning had been raised on redirect that would justify such recross–examination, and that the inconsistent statements spoke for themselves without further discussion. We find no error in that ruling.

■ The conduct of a fair trial is vested within the sound discretion of the trial court, and it will not be reversed absent proof of abuse of that discretion. *United States v. Johnson,* 585 F.2d 119, 125 (5th Cir. 1978); *Wright v. Hartford Accident & Indemnity Co.,* 580 F.2d 809, 810 (5th Cir. 1978). While the presumption favors free corss–examination, *United States v. Alford,* 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624, 628 (1931), the purpose of recross–examination is more limited. It is properly allowed when new matters are raised on redirect or, in the court's discretion, it is determined to be necessary to a full and fair adjudication of the case. Neither justification was present here. The government simply elicited from the witness the truth as to the understanding it had with him regarding his prospects of later prosecution. Not only was it permissible for the government to do this, it was under an affirmative duty to correct the false statements made by its witness. *See, Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218 (1962); *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 341, 79 L.Ed. 791, 794 (1935). While the government could have brought this matter to the court's attention in several ways, it was quite proper to do so through redirect examination. Though the trial court could have allowed further examination by defense counsel, it was not an abuse of discretion to refuse to do so. *United States v. Alonzo,* 571 F.2d 1384, 1387 (5th Cir.), *cert. denied,* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978). Finally, given the fact that defense counsel thoroughly discussed the inconsistent statements during closing argument, we conclude that appellant was not prejudiced by the trial court's refusal to allow recross–examination.

investigation, we reject appellant's contention that willfullness was not proved.

**5.** Appellant also asserts the trial court erred (1) by commenting, in response to the government's objection to a defense question of the government's chief witness, that "This gentleman is not on trial here.", (2) by limiting appellant's cross–examination of Mr. Fred Putnam, another government witness, to the scope of direct examination, (3) by stating that defense counsel made an "unfair comment" when that counsel suggested the court was not treating both parties equally, and (4) by repeating an answer given by a witness when the same question was put to that witness. It is enough to say that the record does not support to even the slightest degree, these assertions that the conduct of the trial court was an abuse of its discretion or prejudicial to the defendant.

### 3. Failure to Give Miranda Warnings

█ Appellant asserts that the trial court erred by refusing to suppress certain statements and documents given by appellant to the Internal Revenue Service investigating agent when that agent failed to give appellant the full *Miranda* warnings. Appellant is incorrect. Internal Revenue Service agents are not required to give *Miranda* warnings in non–custodial interview situations.[6] *Beckwith v. United States*, 425 U.S 341, 347, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976). Appellant's alternate assertion, that the evidence was inadmissible because the government failed to prove that the agent complied with the Internal Revenue Service's regulation requiring that *Miranda*–type warnings be given to people being investigated, is equally without merit. Appellant makes this argument on two grounds. First, that the court erred by not requiring the agent to produce the specific card from which the warnings were read to appellant and second, that the card containing the warnings was never offered into evidence by the government.

█ The first contention is easily dispensed with. Though it is true that the card admitted at trial was not verbatim identical to that from which the agent read appellant's rights, the difference was utterly without significance.[7] Moreover, we find no basis for requiring that an Internal Revenue Service agent produce at trial the specific card from which defendant's rights were read. The government need only prove, as it did here, that the statements made or documents provided were given voluntarily. *Beckwith v. United States*, 425 U.S. 341, 348, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1, 8 (1976).

The second assertion probably results from some confusion in appellant's brief, since any other interpretation is in blatant conflict with the record. Although the specific card used by the agent during his interview with appellant was not produced, the card (discussed in footnote 7) then being carried by the agent was received into evidence[8] quite properly.

### 4. Ineffective Assistance of Counsel

█ Appellant's final contention is that he is entitled to have his conviction reversed on the grounds that he was denied his Sixth Amendment and Fourteenth Amendment rights to effective counsel. For the following reasons we reject this contention. As the foundation for its assertion appellant points to the following:[9] (1) defense coun-

---

**6.** The trial court found and the record clearly indicates that the agent conducting the interview in no way restrained appellant's freedom of movement nor compelled him to answer any question. The interview took place at appellant's store, a location in which he should have been comfortable and at ease. Moreover, the agent informed appellant that he was under no obligation to respond to questioning and was free to terminate the interview at any time. *See* note 7 *infra* for the text of the warning given to appellant.

**7.** The card which was admitted into evidence reads as follows:

In connection with my investigation of your tax liability (or other matter) I would like to ask you some questions. However, first I advise you that under the 5th Amendment to the Constitution of the United States I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything you say and *any documents* you submit may be used against you in any criminal proceeding which may be undertaken. I advise you

further that you may, if you wish, seek the assistance of counsel before responding. (emphasis supplied)

The card which was admitted into evidence differs from that which was actually used during the investigation only in that the emphasized words "any documents" were replaced with the words "any information."

**8.** Record on Appeal, Vol. III, pp. 198–199.

**9.** Appellant also offers a list of errors committed by counsel in preparation for and defense of the case, all of which allegedly rendered counsel ineffective. That list includes failure to adequately cross–examine all witnesses, failure to hire an expert witness, and failure to argue appellant's motion for acquittal. Based on the following analysis, we reject all of appellant's contentions that counsel was ineffective.

Defendants in a criminal prosecution are entitled to the assistance of counsel. Counsel need not have made what, in hind sight, might have been a wiser decision, but need only have provided reasonably effective assistance. *United States v. Childs*, 571 F.2d 315, 316 (5th Cir.

sel's failure to assert the absence of *Miranda* warnings as a violation of appellant's constitutional rights; (2) defense counsel's failure to obtain certain *Jencks Act* statements from the government prior to the testimony of the witnesses who made those statements; and (3) a conflict of interest based on defense counsel's representation of an estate of which certain witnesses at trial were beneficiaries.

In light of our ruling that *Miranda* warnings were not required in this case, it was *a fortiori* not error for defense counsel not to strongly urge that the trial court suppress evidence on the basis that those warnings were not given. With respect to the *Jencks Act* statements, it is clear that defense counsel acted properly and, in fact, obtained those statements earlier than he was entitled to. Strictly applied, the defendant is statutorily authorized to demand copies of those statements only after the witness making them has testified on direct examination. 18 U.S.C. § 3500(a). In this case, defense counsel obtained the statements immediately prior to the witnesses' testimony. Clearly, counsel was not ineffective on that basis. Finally, appellant urges that counsel was rendered ineffective as a result of a conflict of interest arising out of the representation by his law firm of an estate, the possible beneficiaries of which include witnesses at the trial. Strictly on the basis of the limited information contained in the record before us on the question of a conflict, we conclude that the claim is without merit.[10]

AFFIRMED.

1978). · Counsel's conduct of a trial must fall within a broad range of competence. Failure of counsel to provide such assistance denies a defendant of his Fourteenth Amendment due process rights.

This case is a direct appeal from a criminal conviction in a federal district court. Our review of the record indicates full compliance with that standard of competence required of defense counsel—reasonably effective assistance.

Additionally, we note that any suggestion in our prior decisions that a defendant has a higher burden of proof to establish the ineffectiveness of counsel when that counsel is retained rather than appointed, is erroneous in light of the Supreme Court's recent pronouncement on that point. *Cuyler v. Sullivan*, — U.S. —, —, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333, 344 (1980).

10. Appellant moved this Court to allow the record to be supplemented regarding the claim of a conflict of interest. That motion was denied. Our ruling today is limited to the record which was sent from the trial court. In no way do we express any view as to the impact the supplemental material might have had on this decision had it been properly before this Court or properly presented to the trial court. Neither do we express any view as to how the Supreme Court's recent decision in *Cuyler v. Sullivan*, — U.S. —, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), relating to the appropriate standard for evaluating the effectiveness of counsel when there is a claim that counsel had a conflict of interest, might effect the decisions of this Court or the trial court at such time as evidence of a conflict is properly presented.