**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James HOWARD, Defendant–Appellant.**

**No. 87–8228.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 22, 1988.

---

Tony L. Axam, Atlanta, Ga., for defendant-appellant.

Julie E. Carnes, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before KRAVITCH, Circuit Judge, HENDERSON *, and HENLEY **, Senior Circuit Judges.

HENLEY, Senior Circuit Judge:

James Howard appeals his conviction on two counts of intentionally signing false tax returns for the year 1982 in violation of 26 U.S.C. § 7206(1). Howard was sentenced by the district court to eighteen months in prison on the first count, to be followed by a period of five years of probation on the second count. In addition, the court imposed a fine of $15,000.00.

In June of 1982, Howard entered into a written agreement with James McMahan, a

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

real estate developer. At the time, Howard was a member of the Atlanta City Council. The agreement provided that Howard would act as a consultant to McMahan with respect to Resurgens Plaza, an office building development which McMahan was to build on a parcel of land in Atlanta. The agreement provided that Howard would provide consulting services with respect to zoning, the acquisition of development rights, and construction. More specifically, Howard was to provide services in the areas of "community relations, governmental relations, and minority contractor participation in the construction of the Project." In return, Howard was to receive a fee of $300,000.00, later increased in an amendment to the contract to $475,-000.00. The government's evidence showed that Howard received payment in the amount of $118,400.00 and home improvement work worth $50,820.38 from McMahan in 1982 in return for Howard's services under the agreement.

Count one of the indictment charged that Howard's 1982 individual income tax return was false in that it did not reflect the $118,400.00 Howard received from McMahan in 1982.[1] After the agreement became public knowledge, Howard amended his 1982 return to show $25,000.00 in receipts from McMahan in that year. Count 2 of the indictment alleged that the amended return was false inasmuch as it did not include the balance of the $118,400.00 Howard received from McMahan in 1982.

Following jury trial, Howard was convicted on both counts. After having unsuccessfully moved the district court in the alternative for a new trial, or for acquittal,

Howard appealed, contending that the court gave erroneous jury instructions, erroneously excluded expert testimony, and erred in allowing evidence of extrinsic acts. We affirm.

Howard first contends that the trial court erred when it instructed the jury that, as a matter of law, the $118,400.00 should have been reported in 1982 and that the court believed the critical and only issue of fact for the jury was whether the defendant's failure to report was wilful and knowing.[2]

Howard argues that, by instructing the jury that the payments were reportable as income in 1982, the court directed a verdict on an element of the alleged offense in violation of our holding in *United States v. Goetz*, 746 F.2d 705 (11th Cir. 1984). *Goetz* involved a defendant charged with wilfully failing to file a federal income tax return. We held that the district court impermissibly applied the law to the facts by instructing the jury that the defendant's tax form contained no financial information and that it therefore was not a "return." *Id.* at 708. We found that this was error, inasmuch as the instruction essentially directed a verdict on one of the elements of the offense alleged, the failure to file a return. *Id.* at 708, 710. In this case, by contrast, the court merely instructed as a matter of law that the money Howard received from McMahan was reportable in 1982, and correctly left to the jury's determination the ultimate question whether the income was in fact reported or not reported in violation of the criminal law. Nor is

1. The indictment did not charge Howard with failure to report the value of the home improvements.

2. The instruction in dispute was the following: The court has held and now holds as a matter of law that the income which the defendant received, the $118,000, was reportable and should have been reported under the law in the year 1982, and that is so even though there is no issue made with respect to the house improvements, and the court has made no finding with respect thereto, but I do tell you as a matter of law that the court has found under the evidence in the case the $118,000 should have been reported. That

does not end the case, however, because this is not an action in civil court to recover the underpayment but it is a criminal action to determine whether the defendant wilfully made false statements when he filed those two, the 1982 return and the amended return. That gets to what the court believes to be the critical issue of fact in this case and the only issue of fact which the court believes there is for you to determine, and that is whether or not the defendant wilfully underreported his gross income, gross receipts, in 1982, knowing that he should have reported—should report that a larger amount was reportable.

reversal required by the trial court's expression of its "belief" that the only issue for the jury's consideration was the defendant's wilfulness and intent. In *Goetz* we distinguished a trial judge's strong expression of opinion from an instruction directing a verdict. 746 F.2d at 709.

Here, the court quite properly instructed that the government must prove beyond a reasonable doubt that (1) the defendant made or caused to be made an income tax return that was false as to a material matter; (2) the return contained a written declaration that it was made under the penalty of perjury; (3) the defendant did not believe the return to be true and correct as to one or more of the material matters charged in the indictment; and (4) the defendant made or caused to be made and signed the return wilfully.

In other instructions it was made clear that the jury was the judge of the facts and that comments of the court concerning facts were not binding upon the jury. Considering the instructions as a whole, as a unit, as the jury was told it should do, the element of knowing and wilful filing of a false return clearly was left for the jury to determine.

Moreover, we note that at trial the battle was fought to the jury largely upon intent and wilfulness. Many of the basic facts were not in dispute.

We note as well that materiality has been held to be a question of law for the court, *United States v. Gaines*, 690 F.2d 849, 856 (11th Cir.1982); *United States v. Taylor*, 574 F.2d 232, 235 (5th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); and at least one court has indicated that some aspects of falsity may be treated as a matter of law. *United States v. Holecek*, 739 F.2d 331, 335–36 n. 4 (8th Cir. 1984), *cert. denied*, 469 U.S. 1218, 105 S.Ct. 1200, 84 L.Ed.2d 343 (1985). We need not pursue at length the extent to which those authorities might be persuasive here since, as indicated, we find that no ultimate question of fact as to an essential element of the crimes charged was improperly taken from the jury. Specifically, we hold that

the ultimate issue of falsity of the returns in question was left for jury determination.

■ Appellant contends, however, that the court should not have found that the money was reportable in 1982. He claims that the court improperly determined that the amounts paid were not loans or advances subject to repayment. The district court found no evidence sufficient to support a finding that McMahan's payments to Howard were loans or carried any repayment obligation. *United States v. Howard*, 655 F.Supp. 392, 397 (N.D.Ga.1987). Appellant points to McMahan's testimony at trial that, had Howard not performed his obligations under the contract, McMahan would have sued to recover the amounts he had already paid. This testimony was patently insufficient to establish the existence of a loan. Where the facts are undisputed, the question whether an advance constitutes a loan is a question of law for the court to decide. *Alterman Foods, Inc. v. United States*, 505 F.2d 873, 876 (5th Cir. 1974). Although *Alterman* was a civil case, we agree with the government's position that its reasoning applies here as well, for a defendant is not entitled to an instruction on an issue that is not raised by the evidence. *United States v. Costello*, 760 F.2d 1123, 1127 (11th Cir.1985).

■ Howard next contends that the court erred in its instruction that the income was reportable in 1982 because, he argues, he was entitled to defer reporting the income pursuant to the completed, or long-term, contract method of accounting. In tandem with this argument, he contends that the court also erred by excluding expert testimony offered in support of this theory. These arguments lack merit. The treasury regulations define a long-term contract as "a building, installation, construction or manufacturing contract which is not completed within the taxable year in which it is entered into." 26 C.F.R. § 1.451–3(b)(1)(i). The income from a long-term contract may be reported in the year in which the work is completed. 26 C.F.R. § 1.451–3(a)(1) & (b)(2).

■ The Internal Revenue Service has made clear its position, however, that the

long-term contract method does not apply to contracts for personal services, even though the services have some nexus to actual construction. Rev.Rul. 70–67, 1970–1 C.B. 117 (architect may not use method); Rev.Rul. 80–18, 1980–1 C.B. 103 (method not available for engineering services; Rev. Rul. 82–134, 1982–2 C.B. 88 (same). Although revenue rulings do not have the force of law, they are "entitled to respectful consideration," *Groves v. United States,* 533 F.2d 1376, 1380 (5th Cir.) (internal quotation omitted), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976), and are "to be given weight as expressing the studied view of the agency whose duty it is to carry out the statute." *Miami Beach First National Bank v. United States,* 443 F.2d 475, 478 (5th Cir.), *cert. denied,* 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971). *Accord, City Gas Co. of Florida v. Commissioner,* 689 F.2d 943, 946 n. 5 (11th Cir.1982). The district court found that Howard did not contract to perform any construction work, but was merely obligated by his agreement with McMahan to perform personal services. 655 F.Supp. at 399–400. Howard brings nothing to our attention on appeal to controvert the district court's findings, but merely restates his assertion that he was entitled to use the long-term contract method. We agree with the district court's thorough and well-reasoned analysis, and we find no error in the instructions or the exclusion of the testimony of Howard's expert witness.

■■■ Howard argues that, even if he was not entitled to use the completed contract method, he should have been allowed to introduce expert testimony to show that the law is unclear on that issue. When the law is unsettled as to whether income is reportable, a defendant in a criminal case may be entitled to introduce expert testimony to that effect in order to show that he did not wilfully attempt to avoid tax liability. *United States v. Garber,* 607 F.2d 92, 98 (5th Cir.1979); *see United States v. Heller,* 830 F.2d 150, 154–55 (11th Cir.1987).

As authority for the proposition that the completed contract method was arguably available to him, Howard relies on *Loftin & Woodard, Inc. v. United States,* 577 F.2d 1206 (5th Cir.1978). The district court thoroughly analyzed and distinguished *Loftin:*

> [T]he potential applicability [in *Loftin* ] of the completed contract method of accounting is premised, as are the revenue rulings ... on the existence of unpredictable, fluctuating costs, similar to those faced by a general contractor, associated with a multi-year project involving physical activity analogous to the type of activity performed by a general contractor.... [O]n the other hand, there is no evidence that Mr. Howard bore any of [the] risks similar to those of a general contractor. Unlike the corporate taxpayer in *Loftin,* Mr. Howard was not in any way responsible for the final product and could not be held liable for defects in the final product; and, unlike the individual taxpayers in *Loftin,* Mr. Howard had no construction-related costs to incur.

655 F.Supp. at 402.

Again, on appeal Howard does not explicitly take issue with this reasoning; he merely asserts, without elaboration, that *Loftin* stands for the proposition that he was entitled to use the completed contract method. We agree with the district court that *Loftin* does not create any uncertainty or dispute in the law with respect to the type of contract at issue in this case. The principle that the completed contract method is in large part justified by the difficulty in determining the net profitability of a construction project because of fluctuating and unforeseen costs is a longstanding one. *See Sam W. Emerson Co. v. Commissioner,* 37 T.C. 1063, 1068–69 (1962); *Fort Pitt Bridge Works v. Commissioner,* 24 B.T.A. 626, 641 (1931), *rev'd on other grounds,* 92 F.2d 825 (3d Cir.1937), *cert. denied,* 303 U.S. 659, 58 S.Ct. 763, 82 L.Ed. 1118 (1938).[3] Howard cites, and we have found, no authority to the contrary. In fact, Ho-

---

**3.** Recent cases include *Spang Industries, Inc. v. United States,* 791 F.2d 906, 908 (Fed.Cir.1986); *Reco Industries, Inc. v. Commissioner,* 83 T.C. 912, 921 (1984); *Peninsula Steel Products & Equipment Co. v. Commissioner,* 78 T.C. 1029, 1047 (1982).

ward does not precisely identify the nature of the asserted dispute or uncertainty in the law. Hence, we conclude that the district court properly excluded Howard's proffered expert testimony and correctly determined as a matter of law that the long-term contract method did not apply.

■■■ An additional ground for affirmance arises from the paucity of evidence that Howard believed he was entitled to use the long-term method, or that he was aware of any uncertainty in the law. It is true that in *Garber* the Fifth Circuit held that "the relevance of a dispute in the law does not depend on whether the defendant actually knew of the conflict." *Garber*, 607 F.2d at 98. However, expert testimony is not admissible merely to advance a "plausible" theory. *United States v. Burton*, 737 F.2d 439, 443–44 (5th Cir.1984). Thus, a defendant may be required to show that his belief in the validity of the reporting method used is linked to the uncertainty in the law when the uncertainty "does not approach vagueness and is neither widely recognized nor related to a novel or unusual application of the law." *Id.* at 444. We find this reasoning sound, and, even assuming some degree of uncertainty in this case, our discussion so far demonstrates that the law is not open to the type of dispute contemplated in *Burton*. We recently held that a defendant was entitled to an instruction that acquittal was required if the jury found that he either used or believed in good faith that he was using a debatably permitted accounting method. *United States v. Heller*, 830 F.2d 150, 154–55 (11th Cir.1987). Appellant points to evidence that he told his accountant in 1983 that he had received some money and would be receiving some more; we fail to see how this alone can be taken to require or support a finding that appellant was confused or entertained any particular thoughts about the long-term contract method of accounting.

■■■ Finally, Howard contends that the trial court erroneously admitted evidence of his zoning and political activities on behalf of McMahan pursuant to their agreement. Howard contends that this evidence should have been excluded under Rule 404(b) of the Federal Rules of Evidence, which proscribes the use of extrinsic acts as evidence of the defendant's character. *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Extrinsic evidence may be admitted, however, if it is relevant, if it is offered on an issue other than the defendant's character, and if its probative value is not substantially outweighed by its prejudicial effect. *Huddleston v. United States*, —— U.S. ——, ——, 108 S.Ct. 1496, 1501–02, 99 L.Ed.2d 771 (1988); *United States v. Kerr*, 778 F.2d 690, 695 (11th Cir.1985).[4]

The district court correctly ruled that the government's evidence was submitted for the purpose of countering Howard's portrayal of his relationship with McMahan as open and aboveboard, and not for the purpose of attacking Howard's character. The government argues, and we agree, that the evidence could tend to show that Howard's activities as a councilman on behalf of McMahan constituted a conflict of interest, and that this might have provided Howard with a motive to keep the payments a secret. *See Kerr*, 778 F.2d 690, 695–96 (defendant's irregular practice in the dispensing of drugs provided possible motive to burn pharmacy in order to destroy records).

We must next determine whether admission of the evidence created unfair prejudice which substantially outweighed its probative value. Fed.R.Evid. 403; *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979). In this we give deference to the sound discretion of the trial judge. *Kerr*, 778 F.2d at 668. The district court did not allow the government to present the evidence at issue in its case in chief, but permitted its introduction only

---

**4.** An additional protection, not at issue in this appeal, is found in Fed.R.Evid. 105, which provides for a limiting instruction upon request.

*Huddleston*, —— U.S. at ——, 108 S.Ct. at 1501–02.

after ruling that the defense opened the door by putting on evidence of Howard's good faith.[5] The court ruled that the government was entitled to rebut that evidence by attempting to show Howard's mental state with respect to the payments and to establish his desire to prevent their disclosure. 655 F.Supp. at 408. Furthermore, Howard attempted at trial to establish that the monies paid to him were subject to some sort of repayment obligation, a contention he continues to raise on appeal. The evidence of Howard's activities was admissible in rebuttal, as it was relevant to his right to receive a fee for the services he performed on McMahan's behalf. Thus, the evidence was highly probative as to whether Howard wilfully failed to report the payments. Given the prosecution's legitimate need for rebuttal as to issues first broached by the defense, the evidence cannot be characterized as merely "of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Roark,* 753 F.2d 991, 994 (11th Cir.1985) (quoting *McRae,* 593 F.2d at 707).

Finding no error, we AFFIRM the judgment of the district court.

KRAVITCH, Circuit Judge, dissenting:

I agree with the majority that the district court did not err in excluding Howard's proffered expert testimony or in admitting the government's evidence of Howard's activities on behalf of McMahan. I do not agree, however, with the majority's conclusion that the district court did not invade the province of the jury by instructing it that "under the evidence in the case the $118,000 should have been reported." Accordingly, I respectfully dissent.

The majority appears to accept that the falsity of a tax return is a factual element of the offense proscribed by 26 U.S.C. § 7206(1) which the government must prove to the jury's satisfaction beyond a reasonable doubt. *See* Maj.Op. at 835 ("ultimate issue of falsity of the returns" was properly left for jury determination). To the extent that the majority rejects the government's argument that the falsity of a tax return is an issue of law which the judge, not the jury, should decide, I concur.

Although there is no Eleventh Circuit case squarely controlling, our predecessor court indicated that falsity is an element of section 7206(1) which must be proven to the jury. In *United States v. Fontenot,* 628 F.2d 921, 923 (5th Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 406 (1981), the court stated that "in order to prove its case the government must prove both falsity as to a material matter in the tax return and knowledge of such falsity by the accused at the time the return was signed."[1] The court plainly treated falsity as a jury issue in *Fontenot,* for it reviewed the jury's implicit conclusion that the appellant's return was false under the deferential standard of *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), applicable only to the sufficiency of the evidence presented to the jury.[2] In *United States v. Jernigan,* 411

---

5. We express no opinion as to whether the court should have allowed the government to present this evidence during its case in chief.

1. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

2. In light of *Fontenot,* it seems quite remarkable that the government would argue that falsity of a return is an issue of law. Were we to adopt the government's position, we would be required to review the evidence of falsity *de novo* on every appeal from a conviction under § 7206(1). Such review could drastically hinder effective prosecution for the filing of false tax returns. Although the government finds it convenient to press this position in the current case, I suggest that it would soon find its victory on this point to be Pyrrhic, once convicted defendants learn that every conviction under § 7206(1) is vulnerable on the issue of falsity. Furthermore, I cannot believe that Congress intended the courts of appeals to undertake such an interventionist role in prosecutions under § 7206(1).

Although, as the majority states, Maj.Op. at page 835, we need not consider at length the persuasive effect of cases holding that materiality is an issue of law for decision by the court in § 7206(1) prosecutions, I would note that these cases have, for me, no persuasive effect at all. Falsity is an issue ideally suited for jury deter-

F.2d 471 (5th Cir.), *cert. denied,* 396 U.S. 927, 90 S.Ct. 262, 24 L.Ed.2d 225 (1969), the court rejected the argument that the government was required under section 7206(1) to prove that an actual deficiency in tax resulted from a false return and stated that "the crime was complete, when, *as the jury found,* appellant wilfully made and subscribed a return, under the penalties of perjury, which was false as to a material matter." 411 F.2d at 473 (emphasis added). In *Kolaski v. United States,* 362 F.2d 847 (5th Cir.1966), the court remarked that "the gist of the offense is a false statement, willfully made, of a material matter. The statement must be made with respect to a fact or facts [and] [t]he statement must be such that the truth or falsity of it is *susceptible of proof.*" *Id.* at 848 (emphasis added).[3]

"The rule is firmly established that the trial judge cannot direct a verdict in favor of the government for all or even one element of a crime." *United States v. Goetz,* 746 F.2d 705, 708 (11th Cir.1984). "[N]o fact, not even an undisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truth. In our federal system, the Trial Judge may never instruct a verdict either in whole or in part." *Roe v. United States,* 287 F.2d 435, 440 (5th Cir.), *cert. denied,* 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29 (1961). After applying *Goetz* and *Roe* to this case, I cannot conclude that the district court properly left the issue of falsity to

the jury. The district court told the jury, "I now tell you as a matter of law that the court has found *under the evidence in the case* the $118,000 should have been reported." Although the court did not state baldly, "I instruct you that the return in this case was false," it committed essentially the same error by instructing the jury that the court had weighed the evidence and found that the 1982 payments should have been reported. There was nothing left for the jury to do on the issue of falsity; the court's finding that the payments should have been reported on Howard's 1982 tax return was equivalent to a finding that the return was false. The trial court simply applied the law to the facts of the case, which it should not have done. *See Goetz,* 746 F.2d at 708.

The majority seeks to avoid this conclusion by suggesting that the "ultimate issue" of falsity was somehow left to the jury. With due respect, I do not grasp the distinction between the issue of falsity, which the court resolved, and the "ultimate issue" of falsity, which the court supposedly left to the jury. I suspect the majority means that the ultimate issue of whether "the defendant made or caused to be made an income tax return that was false as to a material matter" was left to the jury. *See* Maj.Op. at 835. As so phrased, however, this "ultimate" issue is actually a compound issue, which includes several subsidiary factual determinations that also

---

mination, as the decision turns fundamentally on credibility choices. The materiality determination, by contrast, requires the decision-maker to evaluate the impact of the false information on the governmental body's effectiveness. *See, e.g., United States v. Taylor,* 574 F.2d 232, 235 (5th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978). This task may be inappropriate for jurors who may not have a complete understanding of the functions of judicial tribunals and government agencies and may not adequately appreciate the scope of information that such bodies require. Thus, even though the courts have long held materiality to be an issue of law under both 21 U.S.C. § 7206(1) and 18 U.S.C. § 1621, the general federal perjury statute, they have not extended this holding to other elements of those offenses.

**3.** In *Kolaski,* the court remarked that § 7206(1) is similar to other federal perjury statutes, such

as 18 U.S.C. § 1621, in that falsity of the statement is an essential element of the offense. It is clear that falsity is a jury issue under both 18 U.S.C. § 1621, the general federal perjury statute, and 18 U.S.C. § 1623, which prohibits false declarations before a court or grand jury. *See, e.g., United States v. Nixon,* 816 F.2d 1022, 1029 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988); *United States v. Flowers,* 813 F.2d 1320, 1324 (4th Cir.1987); *United States v. Dudley,* 581 F.2d 1193, 1196 (5th Cir.1978); *United States v. Abrams,* 568 F.2d 411, 421–23 (5th Cir.), *cert. denied,* 437 U.S. 903, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *LaPlaca v. United States,* 354 F.2d 56, 58 (1st Cir.1965), *cert. denied,* 383 U.S. 927, 86 S.Ct. 932, 15 L.Ed.2d 846 (1966); *Young v. United States,* 212 F.2d 236, 241 (D.C.Cir.), *cert. denied,* 347 U.S. 1015, 74 S.Ct. 870, 98 L.Ed. 1137 (1954).

must be made by the jury. For example, the jury must decide whether the return was made or caused to be made by the defendant, not by another person; whether the return was, in fact, a "return";[4] and whether the information on the return was true or false. Howard was entitled to a jury determination on all of these factual issues, not just on the "ultimate" issue.[5]

Nor do I agree with the majority that *Alterman Foods, Inc. v. United States*, 505 F.2d 873 (5th Cir.1974), is applicable to this case. Both *Alterman Foods* and the case on which it relied, *Berkowitz v. United States*, 411 F.2d 818 (5th Cir.1969), were civil suits brought by taxpayers to obtain a tax refund. In both cases, the former Fifth Circuit held that the trial court did not err in deciding, as a matter of law, whether certain "undisputed operative facts add[ed] up to debt or equity." *Berkowitz*, 411 F.2d at 821; *accord Alterman Foods*, 505 F.2d at 876. These holdings are unremarkable, for in civil cases it is always within the province of the trial court to determine the legal significance of undisputed facts. This judicial power is the foundation for summary judgments, directed verdicts, and judgments notwithstanding the verdict under the Federal Rules of Civil Procedure.

There is no analogy to these summary procedures in federal criminal procedure. The government may never obtain a directed verdict of guilt in a criminal case. *Goetz*, 746 F.2d at 708. Indeed, it is fair to say that there is no such thing as an "undisputed operative fact" in federal criminal law. As noted above, a plea of not guilty "puts all in issue, even the most patent truth." *Roe*, 287 F.2d at 440. It is not relevant, as the majority implies, that "at trial the battle was fought to the jury largely upon intent and wilfulness," Maj.Op. at page 835, or that "[m]any of the basic facts were not in dispute." *Id.*

One may be tempted to overlook the district court's error on a seemingly trivial issue, but "a trial court's actions in directing a verdict in a criminal trial, either in whole or in part, cannot be viewed as harmless error." *Goetz*, 746 F.2d at 709.

The majority's error in relying on *Alterman Foods* is not cured by its statement that "a defendant is not entitled to an instruction on an issue that is not raised by the evidence," Maj.Op. at page 835, and its citation to *United States v. Costello*, 760 F.2d 1123 (11th Cir.1985). *Costello* involved the trial court's refusal to instruct the jury on a defense of voluntary intoxication, not an instruction on an element of the government's prima facie case. It has long been the case that a defendant may be required to adduce "some evidence," however slight, before he may obtain a jury instruction on an affirmative defense. *Cf. Davis v. United States*, 160 U.S. 469, 486–87, 16 S.Ct. 353, 357–58, 40 L.Ed. 499 (1895); *Blake v. United States*, 407 F.2d 908, 910–11 (5th Cir.1969) (en banc). This principle has no application, however, when the pertinent issue is an essential element of the government's prima facie case. A district court may not refuse to instruct a jury on any element of the government's prima facie case, even when the defendant fails to bring forward any evidence on that element. Such a practice would violate the defendant's presumption of innocence and would impair the defendant's right to stand mute before any criminal accusation and put the government to its proof:

> The plea of not guilty is unlike a special plea in a civil action, which, admitting the case averred, seeks to establish substantive grounds of defense by a preponderance of evidence. It is not in confession and avoidance, for it is a plea that controverts the existence of every fact essential to constitute the crime charged. Upon that plea the accused may stand,

**4.** *See Goetz,* 746 F.2d at 708 (whether tax return is a "return" is factual determination properly made by jury).

**5.** Even more misleading is the majority's statement that the trial court "correctly left to the jury's determination the ultimate question whether the income was in fact reported or not reported in violation of the criminal law." *See* Maj.Op. at page 834. The trial court may have left this final question to the jury, but as phrased by the majority, this is simply the ultimate issue of whether Howard was guilty or not guilty.

shielded by his presumption of his innocence, until it appears that he is guilty. . . .

*Davis v. United States*, 160 U.S. at 485–86, 16 S.Ct. at 357–58.

I would reverse the conviction and remand for a new trial.