[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 8, 2005
THOMAS K. KAHN
CLERK

Nos. 03-15055 and 03-15056
_____

U.S. Tax Court Nos. 4866-98 and 4256-98

BARNETT BANKS, INC. & SUBSIDIARIES,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Appeals from a Decision of the
United States Tax Court

_____

**(August 8, 2005)**

Before EDMONDSON, Chief Judge, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Barnett Banks acquired two banks that had formerly held charters as savings

and loans associations. On its federal tax returns, Barnett continued to treat the

banks as "domestic building and loan associations" pursuant to Internal Revenue

Code ("IRC") § 7701(a)(19), 26 U.S.C. § 1701(a)(19); domestic building and loan associations are permitted to use the bad-debt-reserve method of accounting under IRC § 593, 26 U.S.C. § 593(a).[1] The Internal Revenue Service Commissioner ("Commissioner") challenged this treatment and issued a notice of deficiency. Barnett filed petitions for redetermination with the Tax Court. The Tax Court granted the Commissioner's motion for partial summary judgment.[2] We affirm.

## **Background**

In an effort to increase its share of the residential loan market, Barnett Banks initiated discussions to acquire United First Federal Savings and Loan ("United") and Home Federal Bank of Florida ("Home") in 1986. The Federal Reserve Board precluded a bank holding company from making a direct acquisition of a healthy thrift institution. Therefore, to complete the acquisition --

[1]We note that § 593(a) has been repealed for taxable years beginning after 31 December 1995. 26 U.S.C. § 593(a).

[2]The Tax Court had two potential issues before it: 1) whether an association chartered as a banking corporation could qualify as a "domestic building and loan association," and 2) *if so* whether the associations satisfied three additional tests under § 7701(a)(19). The Commissioner moved for summary judgment as to the first issue only, asserting that there were material facts in dispute as to the second. The Tax Court granted the Commissioner's motion, concluding that an association chartered under Florida law as a banking corporation could not qualify. Therefore, the Tax Court did not need to reach the second issue; the resulting judgment was a final one.

through a multi-step process -- United and Home converted from federally chartered financial institutions to Florida banking corporations -- United converting to Barnett Bank of Southwest Florida ("Southwest") and Home becoming Barnett Bank of Pinellas County ("Pinellas") -- before merging with a wholly-owned subsidiary of Barnett.

On its post-acquisition tax return for each of the taxable years 1986 through 1994, Barnett treated Southwest as a qualified "domestic building and loan association" pursuant to § 7701(a)(19), and therefore claimed a deduction for Southwest's bad debts under the reserve-method of accounting under § 593. Barnett regarded Pinellas identically for tax purposes for each of the taxable years 1987 through 1994.

In December 1997, the Commissioner issued two notices of deficiency, which among other adjustments, disallowed Barnett's deductions claimed for Southwest's and Pinellas's bad debt reserves and adjusted Barnett's taxable income to reverse Southwest and Pinellas's bad debt reserves in the year of the acquisitions.[3] Barnett filed petitions for redetermination with the Tax Court. The

_____

[3]The following amounts were disallowed because the IRS concluded that Barnett failed to establish that Southwest and Pinellas qualified as a domestic building and loan association under § 7701(a)(19):

cases were consolidated. The parties filed cross-motions for summary judgment on the issue of whether the two financial institutions acquired by Barnett were entitled to use the bad-debt-reserve method of accounting pursuant to § 593. The Tax Court denied Barnett's motion for summary judgment and granted the Commissioner's motion for partial summary judgment. 84 T.C.M. (CCH) 16 (2002). We affirm the Tax Court's decision.

| YEAR | Pinellas | Southwest |
|---|---|---|
| 12/31/86 | -- | $15,848,132 |
| 12/31/87 | $37,408,897 | --- |
| 12/31/88 | (1,597,859) | 2,006,462 |
| 12/31/89 | 2,369,843 | 934,603 |
| 12/31/90 | (1,713,509) | 20,778 |
| 12/31/91 | 2,196,073 | (192,019) |
| 12/31/92 | 1,854,512 | 1,544,816 |
| 12/31/93 | 643,535 | (914,984) |
| 12/31/94 | 599,905 | (151,366) |

**Discussion**

We review de novo the Tax Court's decision to grant summary judgment. Roberts v. Commissioner, 329 F.3d 1224, 1227 (11th Cir. 2003).

IRC § 593 allows a deduction for bad debt reserves for "any domestic building and loan association" that meets the requirements of § 7701(a)(19).[4] 26 U.S.C. § 593. Section 7701 provides definitions, including in sub-part (a)(19), the following definition of "domestic building and loan association" ("DBLA"), that sets forth three tests:

(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof --

(19) Domestic building and loan association.--The term "domestic building and loan association" means a domestic building and loan

---

[4] The relevant text of § 593 reads as follows:
(a) Reserve for bad debts. --
(1) In general. -- Except as provided in paragraph (2), in the case of --
    (A) any domestic building and loan association,
    (B) any mutual savings bank, or
    (C) any cooperative bank without capital stock organized and operated for mutual purposes and without profit,
    there shall be allowed a deduction for a reasonable addition to a reserve for bad debts. . . .
(2) Organization must meet 60-percent asset test of section
 7701(a)(19). -- This section shall apply to an association or bank referred to in paragraph (1) only if it meets the requirements of section 7701(a)(19)(c).
26 U.S.C. § 593.

association, a domestic savings and loan association, and a Federal savings and loan association--

> (A) which either (i) is an insured institution within the meaning of section 401(a) of the National Housing Act . . . or (ii) is subject by law to supervision and examination by State or Federal authority having supervision over such associations;
>
> (B) the business of which consists principally of acquiring the savings of the public and investing in loans; and
>
> (C) at least 60 percent of the amount of the total assets of which (at the close of the taxable year) consists of -- [various elements]

26 U.S.C. § 7701(a)(19).

Barnett argues that the Tax Court erred in finding that the tax benefits accruing to "building and loan associations" are limited to financial institutions with that particular label. Instead, Barnett contends that financial institutions that 1) substantively perform the functions of DBLA's, and 2) qualify under the § 7701(a)(19) tests, are eligible for tax treatment under § 593, regardless of whether they are chartered as DBLA's. We disagree.

A plain reading of § 7701(a)(19) indicates that an institution must be either a "a domestic building and loan association, a domestic savings and loan association, [or] a Federal savings and loan association" (and also must meet the three tests) to qualify as a DBLA for purposes of the code. Section 7701(a)(4)'s definition of "domestic" requires *organization* under state or federal law. 26 U.S.C. § 7701(a)(4) (defining "domestic" as "created or organized in the United States or under the law of the United States or of any State"). Therefore, "domestic building and loan association" or "domestic savings and loan association" must mean a building (or savings) and loan association *organized as such* under the law of the state of Florida (in this case) or the United States. An association that performs similar or even identical functions to a DBLA, but that is not organized under state or federal law as one of the statutorily delineated associations, cannot qualify under the plain meaning of the statute. We note that in a 1990 Revenue Ruling directly on point, the IRS concluded that an institution chartered as a bank could not qualify as a DBLA under § 7701. Rev. Rul. 90-54, 1990-2 C.B. 270. Rejecting a functional test, the Service explained that the introductory language of subpart (a)(19) set forth a threshold requirement:

"[an institution must] be one of the three types listed . . . It is . . . not enough that substantially all of the business of the association is confined to making

7

loans to members. It must still be a domestic building and loan association, a domestic savings and loan association, or a Federal savings and loan association [to qualify as a DBLA]."

Id. (internal quotations and citations omitted).  We have noted that "[a]lthough revenue rulings do not have the force of law, they are entitled to respectful consideration."  United States v. Howard, 855 F.2d 832, 836 (11th Cir. 1988) (internal quotations and citations omitted).  Therefore, based on a plain reading of the statute, buttressed by the agency's interpretation of the provisions, we conclude that a financial institution chartered as a bank shall be allowed no deduction for a reasonable addition to a reserve for bad debts under § 593.[5]

---

[5]Barnett relies in part on the language of Regulation 301.7701-13A(a), defining the term DBLA as "a domestic building and loan association, a domestic savings and loan association, a Federal savings and loan association, *and any other savings institution chartered and supervised as a savings and loan or similar association* under Federal or State law which meets the [tests described in IRC § 7701(a)(19)]." Treas. Reg. § 301.7701-13A(a), 26 C.F.R. § 301.7701-13A, (emphasis added). The Regulation's reference to "other savings institution[s] chartered . . . as a savings and loan" acknowledges the reality that state statutes may vary in the labels given to state-chartered institutions.  The language does not indicate a willingness to accept *any type* of state institution, regardless of charter attainment.  The reference to "similar association" likewise provides flexibility because some states have no statute governing the creation of savings and loan associations and therefore other "similar associations" can apply to "fill the role served in other states by savings and loan associations."  Priv. Ltr. Rul 98-36-030 (Sept. 4, 1998) (concluding that state chartered stock cooperative bank that operated functionally as a DBLA and met § 7701(a)(19)'s tests was eligible for reserve method of accounting -- even though bank *not* chartered as a savings and loan association -- because state in which bank was organized had no statute governing creation of savings and loan associations).

## **Conclusion**

We conclude that § 7701(a)(19) imposes, as a threshold requirement, that an institution attain a state or federal building (or savings) and loan association charter to qualify for the preferential tax treatment granted to DBLA's under § 593.

**AFFIRMED.**